TERRELL, Justice
(concurring).
I concur in the per curiam order of af-firmance. The appeal is from a final decree validating bonds of North Bay Village, approved by the freeholders as provided by Section 6 of Article IX of the Florida Constitution, F.S.A., for the following purposes : $150,000 Sewage Disposal System, $250,000 Sanitary Sewer, $125,000 Storm Sewer, $100,000 Street Improvement, $62,-500 Curbs and Gutters, and $62,500 Sidewalks. The suit to validate was prosecuted as required by Chapter 75, Florida Statutes, F.S.A., and the election to approve the bonds was held January 26, 1954.
The first question for determination is whether or not the registration of freeholders prerequisite to the bond election was valid as contemplated by Sections 1 and 2 of Article VI and Section 6 of Article IX of the Constitution.
Section 2, Article V, of the Charter of the Village, Chapter 29316, Laws of 1953, requires that all elections to authorize any indebtedness over and above the general operating expenses of the village government, the elections and qualification of electors, shall be those prescribed by the general laws of the State of Florida governing other elections. Ordinance 89 of the Village, providing for the bond election, required the registration books to be kept open at the office of the Village Manager during office hours of specified days until the day of the election, for the registration of persons qualified to vote under the Constitution and laws of the State of Florida, who submit proof by affidavit that they are freeholders residing in the Village. The Village Manager was required to and did *887 furnish the Inspectors and Clerk of Election certified lists of such certified electors. The Village Manager and Clerk filed a certificate of these facts as required by the Charter of the Village and the laws of the State of Florida, that the registration of freeholder-electors and the election were held as required by law and that there were 300 qualified electors who were freeholders residing in the village who were qualified to participate in said election.
Of the 300 qualified electors the record discloses that from 250 to 266 voted on the various items in the proposed bond issue, no one was denied the right to vote and the chancellor found that the registration of freeholders was duly publicized, that no freeholder was denied the right to vote on any question. It is our view that the registration of electors was in every respect regular and valid.
The second question challenges the validity of the redemption provisions of Section 2, Resolution 2010, providing for issuance of $150,000 Sewage Disposal System Bonds.
I have examined McNichols v. City & County of Denver, 123 Colo. 132, 230 P.2d 591, and other cases relied on to support this contention but they are in no way parallel to or in point with the case at bar. Not only is this true but we find nothing in the argument in brief of appellant that would warrant us to invalidate said bonds. The question is therefore devoid of merit.
It is next contended that the bonds in question will exceed the statutory debt limit of the Village and should be held void.
This contention is predicated on F.S. § 169.04, F.S.A., which is a general law limiting the issue of bonds of municipalities for certain purposes to not exceeding ten percent of the assessed valuation of real and personal property within the corporate limits of the municipality, provided that this Section shall not apply to cities and towns which have special charters to the contrary. North Bay Village has a special charter provision, being Section 2, Article III, Chapter 29316, Laws of 1953, which provides a limited assessment of 12 mills on the dollar unless authorized by a two-thirds majority of the freeholders. The vote on every issue in this election was decidedly above this' requirement.
Other questions urged have to do with the validity of the Charter of the Village, whether or not the Council and officers of the Village lawfully hold their positions and are authorized to issue the bonds in question and whether or not the resolution authorizing issue of the bonds violates Sections 1 and 12, Declaration of Rights, Constitution of Florida.
I have given careful consideration to these questions but I am convinced that they are all without merit and some of them have no place in the record. There was ample charter power to issue the bonds.
The cross appellants contend that the bonds are invalid because, (1) the proceeds are to be utilized solely for the benefit of the residents of Treasure Island and that the residents of Harbor Island and North Bay Island derive no benefit whatever from the expenditure, (2) the bonds were conceived and promulgated in the utmost secrecy and the voters of the Village did not know what they were voting for, and (3) the three Council members from Treasure Island determined and executed the project without consulting the other members of the Council.
The record discloses that the resolution canvassing the returns of the bond election was participated in by all members of the Council and no objection was raised. It is true that the Village is composed of three islands which it is proposed to improve, but I find nothing in the record which shows that all improvements are to be made on Treasure Island or any other single island. In fact, the reasonable inference from the evidence is that each island will be bene-fitted by the improvement and that such improvements will be properly distributed.